Vt. Fed. Credit Union v. Noel, No. S0703-12 CnC (Crawford, J., Feb. 8, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                                        CIVIL DIVISION
Chittenden Unit                                                        Docket No.: S0703-12 CnC

Vermont Federal Credit Union
    Plaintiff

    v.

Adam L. Noel
    Defendant

DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

After repossessing and selling defendant Adam L. Noel's car, plaintiff Vermont Federal Credit Union (VFCU) brought this case, asserting that the vehicle was sold in a commercially reasonable manner but that a deficiency of $11,443.54 remains. Mr. Noel has filed affirmative defenses and counterclaims, alleging that VFCU violated Vermont's Uniform Commercial Code (UCC) provisions concerning default in a secured transaction. Specifically, Mr. Noel contends that VFCU failed to dispose of the collateral in a commercially reasonable manner, and failed to provide adequate notice before and after the disposition of the collateral. Both sides have moved for summary judgment. VFCU asserts that it is entitled to summary judgment on its claim and on Mr. Noel's counterclaim. Mr. Noel maintains that he is entitled to summary judgment on his defense and counterclaim that VFCU's pre-sale notice was inadequate, and that there are disputed material facts as to the commercial reasonableness of the sale.

John C. Gravel, Esq. represents VFCU; Mr. Noel represented himself until September 2012, when Laura C. Bierley, Esq. of Legal Services Law Line of Vermont entered an appearance for him.

BACKGROUND

The following facts are undisputed except where noted. On or about September 23, 2010, Mr. Noel entered into a Loanliner Open-End Application and Plan Signatures Plus Agreement with VFCU to finance the purchase of a 2007 Pontiac Torrent. Pursuant to that agreement, Mr. Noel received $20,607.37 from VFCU for the purchase of the vehicle. Mr. Noel agreed that the vehicle would serve as collateral securing his loan obligation to VFCU. He purchased the vehicle primarily for personal use.

Mr. Noel defaulted on the loan by failing to make monthly payments to VFCU. On or about January 29, 2012, VFCU repossessed the vehicle. According to Mr. Noel, he was in

contact with VFCU by phone and accessed his account online before the vehicle was repossessed. Noel Aff. ¶ 2 (Nov. 20, 2012).

On or about February 6, 2012, VFCU sent via certified mail a "Redemption Notification" to Mr. Noel's last known address at 3067 Saint Armand Road, Swanton, VT 06588. The February 6 notification stated that Mr. Noel was in default, that the vehicle was repossessed, and that it would be sold at a private auction or sale after February 16, 2012. The notification went on to state that Mr. Noel would be responsible for paying any deficiency after the sale.

Finally, the notification stated that "[i]f you are interested in redeeming the above collateral follow the instructions on the next page." The second page of the notification—entitled "Redemption Instructions"—indicated a delinquency of $1,182, and that Mr. Noel would have to redeem prior to February 16, 2012. The instructions did not explicitly state that Mr. Noel was entitled to an accounting of the unpaid indebtedness, nor did they state what the charge might be for such an accounting. The instructions did include the following statement:

> The above amount does not include repossession/redemption/storage fees. Should you decide to redeem the collateral, please contact us so that we may obtain the fees due as of the date you wish to do so. If you are not redeeming the vehicle and there is personal property remaining in it, you must contact Majestic Repossession and Transportation at 802-860-4900 to make arrangements to obtain your personal property.

The U.S. Postal Service reported that, after twice leaving notice of the certified February 6 notification for Mr. Noel at his Swanton address, it was not claimed, and was instead returned to VFCU on or about February 25, 2012.

Mr. Noel did not receive the February 6 notice. He did not redeem the vehicle or cure the default by making payment to VFCU. VFCU sold the vehicle on or about February 29, 2012 at a dealer auction. VFCU applied the $7,900 sale price to the balance of Mr. Noel's obligation.

Prior to the February 29 sale, VFCU conducted an evaluation of the vehicle's condition. The vehicle condition report described the vehicle's general condition as "poor," and specifically remarked that the vehicle had numerous scratches and dents, a "very dirty" interior, and four bald tires. The vehicle was nevertheless driveable and in "average" mechanical condition, and had approximately 63,000 miles on the odometer. An October 2012 estimation from the online service Kelley Blue Book indicates that a 2007 Pontiac Torrent in "excellent" condition with 63,000 miles would fetch roughly $10,000 at a private sale.

On or about March 16, 2012, VFCU sent via certified mail notice of the vehicle's sale, and an accounting for the deficiency balance owed, to Mr. Noel's Swanton address. The U.S. Postal Service reported that, after twice leaving notice of the certified March 16 letter for Mr. Noel at his Swanton address, it was not claimed, and was instead returned to VFCU on or about April 10, 2012. Mr. Noel did not receive the March 16 letter. He asserts that he never received a notice that he had certified mail from VFCU after the vehicle was repossessed, and that he learned that the vehicle was sold only by accessing his account information online and learning that there was a credit from the sale of the vehicle. Noel Aff. ¶¶ 4, 5 (Nov. 20, 2012).

On or about June 20, 2012, Mr. Noel was served with the summons and complaint in this case at 3067 Saint Armand Road, Swanton, Vermont. The documents were delivered to Mr. Noel's sister-in-law, Shantell Noel. As of October 16, 2012, the outstanding balance on Mr. Noel's deficiency account is the principal sum of $11,418.54, together with interest in the amount of $377.96, for a total of $11,795.50.

ANALYSIS

The first issue is whether the February 6 redemption notification was inadequate for lack of a statement that "the debtor is entitled to an accounting of the unpaid indebtedness" and a statement of "the charge, if any, for an accounting." 9A V.S.A. § 9-613(1)(D).[1] Mr. Noel maintains that, without such statements, the notice is inadequate as a matter of law. See *id*. § 9-614 Official Cmt. 2 ("A notification that lacks any of the information set forth in [§ 9-614(1)] is insufficient as a matter of law."). VFCU contends that the redemption notice's lack of the specific language in § 9-613(1)(D) or the language in the safe harbor form set forth in § 9-614(3) does not invalidate the notice. VFCU notes that § 9-614(2) states that "[a] particular phrasing of the notification is not required," and that the notice it sent was sufficient because VFCU did provide "a mini-accounting of the then-current indebtedness" and also advised Mr. Noel that if he wished to redeem he could obtain a more precise accounting indicating the aggregate of his unpaid obligation and identifying its various components. Pl.'s Opp'n at 2 (filed Dec. 13, 2012). As for a statement of any charge for an accounting, VFCU states that it does not charge debtors to provide the information, and thus was not required to include any cost information in the notice. *Id*.

VFCU does not dispute that its February 6 redemption notice did not follow the safe harbor form printed in § 9-614(3), and that it does not utilize the precise language set forth in § 9-613(1)(D). Still, as VFCU notes, a particular phrasing of the notification is not required.

---

[1] By its own terms, § 9-613 does not apply to consumer-goods transactions. (There is no dispute that the transaction in this case was a consumer-goods transaction, as that term is defined in 9A V.S.A. § 9-102(24).) However, by virtue of 9A V.S.A. § 9-614(1)(A), a notification of disposition must include the information specified in § 9-613(1), including the information in § 9-613(1)(D).

The question thus becomes whether the language that VFCU did use conveyed the essential information contemplated by § 9-613(1)(D). The court concludes that it did not.

Despite VFCU's assertion that the February 6 notice was itself a "mini-accounting," the recitation that there was a $1,182 delinquency (plus potential repossession, redemption, and storage fees) cannot qualify as an "accounting." See 9A V.S.A. § 9-102(4) (defining an accounting as a record that, among other things, identifies "the components of the obligations in reasonable detail"). Moreover, the February 6 notice did not, as VFCU claims, advise Mr. Noel that he could obtain an accounting. The statement that the $1,182 delinquency does not include repossession, redemption, or storage fees suggests that such fees might be added to the $1,182, but does not constitute notice that Mr. Noel is entitled to an explanation of how VFCU calculated any of the amounts. The statement that Mr. Noel could "contact us so that we may obtain the fees due," was equivalent to a statement that Mr. Noel could call "[t]o learn the exact amount you must pay." *Id*. § 9-614(3). That is different than an offer to explain in writing how VFCU figured the amount owed. See *id*.; see also *N. Country Fed. Credit Union v. Carpenter*, No. 392-6-10 Wncv, 2010 WL 8357562 (Vt. Super. Ct. Nov. 23, 2010) (Crawford, J.) (notification that failed to state that debtor was entitled to an accounting of the unpaid indebtedness was defective); accord *Limtiaco v. Auction Cars.com, LLC*, No. 2:11-cv-00370-MMD-PAL, 2012 WL 4911726, at *6 (D. Nev. Oct. 15, 2012) (concluding on summary judgment that the disposition notice was insufficient because nothing in the notice could be construed to convey to the debtor the information about her entitlement to an accounting and any charge therefor).[2]

Having concluded that VFCU failed to comply with § 9-613(1)(D), the court turns now to the consequences of that failure. Mr. Noel argues that VFCU's failure to comply is a bar to collection on the deficiency. In support, Mr. Noel cites *Chittenden Trust Co. v. Andre Noel Sports*, 159 Vt. 387 (1992) and *Chittenden Trust Co. v Maryanski*, 138 Vt. 240 (1980). Although both of those cases were decided prior to the 2001 repeal and reenactment of Article 9, see 9A V.S.A. § 9-701, for consumer transactions where a deficiency is in issue, the current version of Article 9 leaves it to the courts to determine the proper rules. 9A V.S.A. § 9-626(b). The undersigned has previously declined to abandon *Maryanski*'s absolute-bar rule without guidance to that effect from the Vermont Supreme Court. See *Carpenter*, No. 392-6-10 Wncv. The court continues to decline to do so in this case for the same reason, and therefore concludes that the absolute-bar rule prevents VFCU from obtaining a deficiency judgment.

Mr. Noel also argues that VFCU's failure to comply with § 9-613(1)(D) entitles him to recover damages pursuant to § 9-625(c)(2). The court agrees. Section 9-625(c)(2) "is designed

---

[2] The court rejects VFCU's argument that the question of sufficiency of the notice is a question of material fact. It is a question of fact for *commercial* transactions. See 9A V.S.A. § 9-613(2) ("Whether the contents of a notification that lacks any of the information specified in paragraph (1) are nevertheless sufficient is a question of fact."). In *consumer-goods* transactions, however, "[a] notification that lacks any of the information set forth in [§ 9-614(1)] is insufficient as a matter of law." *Id*. § 9-614 Official Cmt. 2.

4

to ensure that every noncompliance with the requirements of part 6 in a consumer goods transaction results in liability, regardless of any injury that may have resulted." 9A V.S.A. § 9-625(c)(2) Official Cmt. 4. VFCU does not argue and the record does not suggest that any provision of § 9-628 might apply to remove or limit VFCU's liability for minimum statutory damages. The court therefore concludes that Mr. Noel is entitled to statutory damages as well.

Because VFCU is barred from seeking a deficiency, the court does not address Mr. Noel's argument that VFCU should have taken further action after the February 6 notification was returned unclaimed, or his argument that VFCU otherwise failed to dispose of the collateral in a commercially reasonable manner.

## ORDER

VFCU's motion for summary judgment (filed Oct. 26, 2012) is denied. Mr. Noel's cross-motion for summary judgment (filed Nov. 26, 2012) is granted. Mr. Noel shall submit a proposed judgment order with an explanation of how he calculated the statutory damages. Plaintiff has 15 days to respond.

Dated at Burlington this ___ day of February 2013

_____
Geoffrey Crawford,
Superior Court Judge

5